**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LISA LAMBERT,

        Plaintiff,

v.

CHARLOTTE BLACKWELL, et al.,

        Defendants.

Civil Action No. 07-3630 (GEB)

**OPINION**

RECEIVED
AUG 24 2007
AT 8:30_____M
WILLIAM T. WALSH
CLERK

**APPEARANCES:**

Plaintiff pro se
Lisa Lambert
MCI Framingham
P.O. Box 9007
Framingham, MA 01704

**BROWN, JR.**, Chief Judge

    Plaintiff Lisa Lambert, a prisoner confined at the Massachusetts Correctional Institution at Framingham, Massachusetts, seeks to bring this action alleging violations of her constitutional rights while previously confined at the Edna Mahan Correctional Facility for Women in Clinton, New Jersey.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on August 8, 2005, while she was in the cafeteria at the Edna Mahan Correctional Facility for Women, she was assaulted by fellow prisoner Haila Gabr. Plaintiff alleges that the beating began from behind Plaintiff with rapid, crushing blows about the head and face. Plaintiff alleges that the prison officials who were present knew Gabr to be a violent prisoner and knew, in addition, that Plaintiff was legally blind and unable to defend herself adequately. Nevertheless, Plaintiff alleges, Defendant Lieutenant Bingham waited nearly five minutes before summoning a nearby emergency response team that was assembled and ready at all times to respond to disturbances in the cafeteria.

Plaintiff alleges that the beating continued for approximately twenty minutes, during which time Gabr punched and kicked Plaintiff about her entire body. Plaintiff alleges that the beating was so violent that Gabr had to stop, twice, to rest. During this time, Plaintiff alleges that Defendant Lieutenant Bingham failed to intervene or to unlock the cafeteria door to allow other officers to enter. Plaintiff alleges that another Defendant, Correctional Officer John Doe I, was also present and failed to intervene.

2

Plaintiff alleges that after other officers finally entered the cafeteria and removed Gabr, Plaintiff was left lying on the floor of the cafeteria despite her injuries including a cut scalp, black eyes, a broken nose, split lips, and bruises on her entire body. When ordered to stand, Plaintiff alleges that she fell repeatedly.

Plaintiff alleges that she was taken to the prison infirmary, which she describes as "a bare, dirty jail cell and a hospital bed with dirty, urine soaked sheets covering it." Plaintiff alleges that she was not taken to a hospital for appropriate diagnostic tests or treatment. Plaintiff alleges that she was given Motrin tablets to relieve pain and, two days after the attack and based only upon the intervention of her parents, an x-ray of her neck.

Plaintiff alleges that because of the failure to provide prompt and appropriate medical care, she now suffers from permanent damage to her spine, neck, and the nerves in her arms and legs. She alleges that she now suffers from chronic pain and must undergo painful cortisone shots that are injected directly into her spine.

Plaintiff alleges that after her release from the infirmary the morning following the attack she found her cell vandalized and that property with a value of approximately $400 had been taken. Because she received paperwork indicating that the damage

3

occurred around 4:00 a.m., when all inmates were locked in, she believes that a correctional officer, identified in the Complaint as Defendant Correctional Officer John Doe III, was responsible for this loss of property.

Plaintiff alleges that she immediately made Defendant Superintendent Charlotte Blackwell aware of the beating, the failure to provide medical care, and the loss of her personal property. Plaintiff alleges that Defendant Superintendent Blackwell refused to compensate her for her lost property or to obtain medical care for her.

Plaintiff asserts a claim for failure to protect her against Defendants Lieutenant Bingham and Correctional Officer John Doe I. She asserts a claim for failure to provide adequate medical care against Defendants Lieutenant Bingham, Correctional Officer John Doe I, Shift Commander John Doe II, and Superintendent Blackwell, all of whom Plaintiff alleges were aware of her serious injuries and refused to provide appropriate medical care. Plaintiff asserts the claim for lost property against Defendant Correctional Officer John Doe III. She seeks compensatory and punitive damages and such other relief as this Court deems appropriate.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain prisoner actions that are frivolous, malicious, fail to

state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

5

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). See also Morse v. Lower Merion School Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of her constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### IV. ANALYSIS

#### A. Eighth Amendment Failure-to-Protect Claim

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). Under the Eighth Amendment, prison officials have a duty to provide humane

conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (1994) (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim. The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he was "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated

incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834.

Here, Plaintiff does not allege facts which suggest that defendants were informed of a specific risk of harm to herself or other inmates, Nami, 82 F.3d at 67-68; Young, 960 F.2d at 362, or that "a substantial risk of inmate attacks was longstanding, pervasive, well-documented" or otherwise obvious to them, so that the defendants should have prevented the attack from occurring in the first instance. Farmer, 511 U.S. at 842; accord Hamilton v. Leavy, 117 F.3d 742, 747-48 (3d Cir. 1997); Ingalls v. Florio, 968 F.Supp. 193, 199-200 (D.N.J. 1997). Instead, it appears that Plaintiff is alleging that the risk of harm became obvious to Defendants Bingham and John Doe I at the time the attack began and that they then owed her a duty to intervene to end the attack.

It is generally agreed that unarmed prison guards have no duty to intervene in an unanticipated attack by an <u>armed</u> inmate upon another inmate, where intervention would place the guards at risk of serious physical injury. <u>See</u>, <u>e.g.</u>, <u>Winfield v. Bass</u>, 106 F.3d 525, 530-33 (4th Cir. 1997) (collecting cases). <u>See also</u>, <u>Rios v. Scott</u>, 100 Fed.Appx. 270 (5th Cir. 2004) ("there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup to seek to avoid her own serious injury"). Here, however, the allegation is that Gabr was unarmed, and Plaintiff alleges that the required intervention should have taken the form of a telephone call to the emergency response team positioned a mere 25 feet from the cafeteria and a move to open the cafeteria doors, or personal intervention when Gabr became tired, none of which appear likely to have put Defendants Bingham and John Doe I at risk of physical harm. Moreover, it is well established that "correctional officers could not simply stand by and do nothing at all in the face of an attack and ... assault by one inmate upon another." <u>Jiminez v. Renner</u>, 2007 WL 470576, *5 (E.D. Texas Feb. 12, 2007).

Accordingly, the allegations are sufficient to allow the failure-to-protect claim to proceed as against Defendants Bingham and John Doe I.

B. <u>Eighth Amendment Medical Care Claim</u>

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. <u>Id.</u> at 106.

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).

The second element of the <u>Estelle</u> test requires an inmate to show that prison officials acted with deliberate indifference to

her serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with her medical care does not in itself indicate deliberate indifference. <u>Andrews v. Camden County</u>, 95 F.Supp.2d 217, 228 (D.N.J. 2000); <u>Peterson v. Davis</u>, 551 F.Supp. 137, 145 (D. Md. 1982), <u>aff'd</u>, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate

'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met." <u>Monmouth County Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d at 346 (citations omitted). Under certain circumstances, non-medical supervisors may be liable under § 1983 for the failure to provide adequate medical care. <u>Compare</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with <u>Sprull v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable under § 1983 if he knew or had reason to know of inadequate medical care).

Here, Plaintiff alleges that Defendants Superintendent Blackwell, Lieutenant Bingham, Correctional Officer John Doe I, and Shift Supervisor John Doe II had personal knowledge that she had suffered serious injuries as a result of the attack by Gabr and they refused to provide appropriate diagnostic tests or treatment. The allegations are sufficient to avoid dismissal at this screening stage of the litigation.
13

C.  Fourteenth Amendment Deprivation-of-Property Claim

Finally, Plaintiff contends that Correctional Officer John Doe III is liable for the loss of personal property valued at $400 from her cell.

An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 530-36 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986). In Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action. But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000) (citing United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993)) (in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

Here, the allegation that a correctional officer took personal property from Plaintiff's cell fails to state a claim

for deprivation of property without due process. If the action of Defendant Correctional Officer John Doe III was unauthorized, as Plaintiff appears to contend, Plaintiff has failed to state a claim because New Jersey does provide a post-deprivation remedy for unauthorized deprivation of property by public employees. See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001). Plaintiff has alleged no facts suggesting that Defendant John Doe III deprived her of property pursuant to an established state procedure, nor has this Court located any such established procedure. To the contrary, established state procedures require prison officials to preserve personal property of inmates. See, e.g., N.J. Admin. Code §§ 10A:1-11.1 et. seq. (2001).

It does not appear that amendment could cure the deficiencies in Plaintiff's deprivation of property claim. Accordingly, it must be dismissed with prejudice.

## V. CONCLUSION

For the reasons set forth above, the deprivation-of-property claim must be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c), for failure to state a claim. The Eighth Amendment claims will be permitted to proceed. An appropriate order follows.

Garrett E. Brown, Jr.,
Chief Judge
United States District Court

Dated: August 20, 2007

15