NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LISA LAMBERT, | : | |
| Plaintiff, | : | Civ. No. 07-3630 (GEB) |
| v. | : | **MEMORANDUM OPINION** |
| BLACKWELL, et al., | : | |
| Defendants. | | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion to dismiss and the motion for summary judgment of Charlotte Blackwell ("Blackwell"), Lieutenant Bingham ("Bingham") and two unidentified correctional officers ("Officer 1" and "Officer 2", respectively) (collectively, "Defendants"). The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant Defendants' motion for summary judgment and deny their motion to dismiss as moot.

**BACKGROUND**

Plaintiff Lisa Lambert ("Plaintiff" or "Lambert") was an inmate at the Edna Mahan Correctional Facility for Women in Clinton, New Jersey (the "Facility") at all times relevant to this matter. (Compl. at 2; Def. Br. at 1.) On August 8, 2005, Plaintiff was attacked by another inmate, Haila Gabr ("Ms. Gabr") in the Facility's cafeteria. (Compl. at 3; Def. Br. at 4.) Ms. Gabr approached Plaintiff from behind at dinner time and repeatedly punched her in the head with both fists. (Compl. at 3; Def. Br. at 4.) Ms. Lambert did not defend herself during the

incident. (Compl. at 3; Def. Br. at 4.) Ms. Gabr continued her assault until the Facility's Max Mess Response Team ("MMRT") entered the Mess Hall and put an end to the violence. (Compl. at 5; Def. Br. at 3-5.) The parties disagree on the amount of time it took the MMRT to arrive on the scene of the incident. (Compl. at 4; Def. Br. at 5.) Plaintiff in particular contends that Lieutenant Bingham, one of the correctional officers who witnessed the entire assault, deliberately delayed calling the MMRT, failed to clear the cafeteria of inmates and failed to promptly unlock the cafeteria door for the MMRT team to intervene. (Compl. at 4.)

Once the MMRT restrained Ms. Gabr and removed her from the scene, Ms Lambert was left sitting on the floor. (Compl. at 5; Declaration of Pamela Trent ("Trent Decl.") Ex. G (the "Videotape").) She claims she was unable to stand up properly and fell several times as a result of the trauma she had sustained. (Compl. at 5.) Plaintiff alleges in particular that she suffered a head concussion, cuts to the scalp, two black eyes, a broken nose, and a bruised forehead and neck, among other injuries. (*Id*.) She claims she was placed in the infirmary, but that in spite of the severity of the injuries, was only given painkiller tablets, a physical the following day, and neck x-rays two days later. (*Id*. at 5-6.) She submits that the treatment she received was inadequate in light of her injuries, and that she now has permanent damage to her spine, neck, arms and legs as a result of Defendants' deliberate indifference to her medical need. (*Id*. at 6.)

On August 3, 2007, Plaintiff filed a complaint (the "Complaint") seeking relief pursuant to 42 U.S.C. § 1983 and alleging: (i) that Defendant Bingham and Officer 1 failed to protect her from assault, (ii) that Defendant Blackwell (the Superintendent of the Facility), Defendant Bingham and Officers 1 and 2 were deliberately indifferent to her medical needs, and (iii) that a third unnamed correctional officer ("Officer 3") was responsible for the August 9, 2005 loss of

her property. (Compl. at 8-9; Def. Br. at 1-2.) The Court dismissed Plaintiff's property claim on August 20, 2007. (Def. Br. at 2; Docket Entry No. 3.) On March 18, 2008, Defendants filed their motion to dismiss and their motion for summary judgment. (Docket Entry No. 16.) Plaintiff opposes both motions. (Docket Entry No. 17.)

**DISCUSSION**

    **A.**    **Standard**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).[1]

---

[1] The Court will only address Defendants' motion for summary judgment, as the ruling on that motion moots Defendants' motion to dismiss.

### B. Application

#### 1. Failure to Protect Claim

Defendants contend that Lieutenant Bingham and Officer 1 are entitled to qualified immunity with respect to Plaintiff's claim that they failed to protect her from Ms. Gabr's assault. (Def. Br. at 14.)

"As an 'accommodation of competing values,' qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where the defendant officer was 'plainly incompetent or . . . knowingly violate[d] the law,' while immunizing an officer who 'made a reasonable mistake about the legal constraints on his actions.'" *Farmer v. Hayman*, No. 06-3084, 2008 U.S. Dist. LEXIS 2241, at *15-16 (D.N.J. Jan. 11, 2008), *quoting Curley v. Klem*, 499 F.3d 199, 206-07 (3d Cir. 2007). Courts have adopted a two-step inquiry to "determin[e] whether a governmental officer is entitled to qualified immunity. First, the Court must address whether 'the officer's conduct violated a constitutional right.'" *Farmer*, 2008 U.S. Dist. LEXIS 2241, at *16, *quoting Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability." *Farmer*, 2008 U.S. Dist. LEXIS 2241, at *16-17, *quoting Curley*, 499 F.3d at 207. "The inquiry under this second step addresses whether the right was clearly established." *Farmer*, 2008 U.S. Dist. LEXIS 2241*, at *17, *quoting Saucier*, 533 U.S. at 201.

It is well established that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), *quoting Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988), *cert. denied* 488 U.S.

4

823 (U.S. Oct. 3, 1988) (No. 87-1980). However, an official will not be deemed liable under the Eighth Amendment for denying an inmate humane confinement conditions "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brennan*, 511 U.S. 825, at 837. In essence, the prisoner must establish the "prison official's deliberate indifference to a substantial risk of serious harm" to the inmate. *Id.* at 828; *see also Bacon v. Sherrer*, No. 06-504, 2008 U.S. Dist. LEXIS 28065, at *14 (D.N.J. April 1, 2008) ("To survive a motion for summary judgment on a failure to protect claim, a plaintiff must produce evidence that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials acted with deliberate indifference . . ."). "[I]t is not enough that a prison official should have been aware of some risk to prison inmates." *Bacon*, 2008 U.S. Dist. LEXIS 28065, at *14, *citing Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

  Ms. Lambert submits that Defendant Bingham knew Plaintiff was being brutally assaulted in the mess hall yet deliberately delayed the arrival of the MMRT. (Compl. at 8.) She contends the assault was allowed to last up to 20 minutes as a result of said delay, and that she was severely injured during the course of the incident. (*Id.* at 4.) Ms. Lambert suggests that the security videotape of the incident provided to the Court was altered, incomplete, and shot "a full 15 minutes after th[e] attack started." (Pl. Opp'n at 2.)

  A review of the videotape submitted by Defendants, however, shows that the entire assault lasted no longer than 3 minutes between the initial blow by Ms. Gabr and the arrival of the MMRT in the mess hall. (*See* Videotape.) Moreover, Ms. Lambert's allegations of tape

editing seem misplaced, since the tape bears a continuously running timestamp and clearly shows the incident from beginning to end. (*Id.*)

Ms. Lambert's suggestions of intentional delay of the MMRT also appears unfounded. Defendants submitted the Facility's Administrative Plan Manual ("the Manual") governing MMRT procedures to be followed in case of violent incidents such as the one at issue here. (Trent Decl. Ex. F.) According to the Manual, the first step is for a correctional officer to announce a Code 33 on the radio. (*Id.* at 8.) "[E]fforts will [then] be made to have the participants exit the area." (*Id.*) "If the participants refuse to exit the area[,] an attempt will be made to clear [the] inmate activity area of inmates by terminating the activity and running control movements out of the area, until the involved inmates can be separated from the group and escorted from the scene." (*Id.*) "Custody personnel responding to Codes occurring in [the Mess Hall] will not enter the[] area until the . . . Lieutenant gives the order to proceed." (*Id.* at 9.) The . . . Lieutenant's decision to enter the[] area[] should be based on the fact that previous attempts to have participants exist the area have been unsuccessful, weapons are involved, and/or death or serious bodily injury may occur if . . . Staff do not immediately intervene." (*Id.*) Only when the Lieutenant gives the green light do the MMRT enter the mess hall in a controlled uniformed formation. (Def. Br. at 3-4.)

Nothing in the videotape suggests any departure from this procedure. While Plaintiff contends that "Defendant Lieutenant Bingham failed to clear the cafeteria of inmates, failed to call for the emergency response team, and failed to unlock the cafeteria door to allow officers to enter, intervene and protect Plaintiff Lambert", the videotape appears to contradict those statements. (Compl. at 4; Videotape.) The vast majority of the inmates took well over two

minutes to leave the room after the start of the incident. (Videotape.) Once the area was largely clear, the MMRT intervened. (*Id.*)

For the foregoing reasons, the Court holds that even viewing the underlying facts and drawing all reasonable inferences in favor of the non-moving party, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant Bingham and Officer 1 failed to protect Ms. Lambert from a known danger, and thus violated her constitutional rights.

        2.        Deliberate Indifference to Plaintiff's Medical Need

Plaintiff argues that Superintendent Blackwell, Lieutenant Bingham and Officers 1 and 2 "were all aware of [her] massive injuries[] and yet . . . were indifferent to [her] medical needs . . . ." (Compl. at 8.) Plaintiff concludes that Defendants violated her Eighth Amendment rights under the United States Constitution. (*Id*.)

As a threshold matter, Defendants submit they are entitled to summary judgment that Plaintiff's claim against Defendant Blackwell is barred as a matter of law because Plaintiffs' claim cannot be premised upon a theory of respondeat superior. (Def. Br. at 22.) The Court agrees. It is well established that "[l]ocal government units and supervisors are not liable under Section 1983 solely on a theory of respondeat superior." *Hagan v. Rogers*, No. 06-4491, 2008 U.S. Dist. LEXIS 39019, at *19 (D.N.J. May 13, 2008), *citing Okla. City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985); *Monell v. New York City Dept. of Soc. Svcs*., 436 U.S. 658, 690-91 (1978). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior." *Hagan*, 2008 U.S. Dist. LEXIS 39019, at *20, *quoting Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or actual

7

knowledge and acquiescence." *Hagan*, 2008 U.S. Dist. LEXIS 39019, at *20, *quoting Rode*, 845 F.2d at 1207; *see also Baker v. Monroe Twp*., 50 F.3d 1186, 1190-91 (3d Cir. 1995). "[S]upervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or if the supervisor's actions and inactions were 'the moving force' behind the harm suffered by the plaintiff." *Jackson v. Taylor*, No. 05-823, 2006 U.S. Dist. LEXIS 57024 (D. Del. May 12, 2006), *citing Sample v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also City of Canton v. Harris*, 489 U.S. 378 (1989). However, "'mere knowledge' allegations are insufficient to state a constitutional claim." *Junne v. Atl. City Med. Ctr.*, No. 07-5262, 2008 U.S. Dist. LEXIS 34147, at *32 (D.N.J. April 25, 2008).

Ms. Lambert does not allege Superintendent Blackwell implemented deficient policies that led to Plaintiff's alleged lack of medical care. Ms. Lambert's submissions are also bereft of any allegation that Superintendent Blackwell had personal involvement in the claimed wrongs. At most, Ms. Lambert appears to suggest that Ms. Blackwell was aware of Plaintiff's complaints with respect to the treatment she had received, because Ms. Lambert had submitted an extensive Inmate Request Form and because her parents had written to the Superintendent. (*See* Exh. to Pl. Opp'n.) Such allegations are however insufficient, even viewing all evidence in the light most favorable to non-movant, to raise a genuine issue of material fact as to whether Superintendent Blackwell implemented deficient policies that led to Ms. Lambert's alleged harm or whether she was the "moving force" of the harm. The Court therefore holds that Ms. Blackwell cannot be deemed liable under Section 1983 solely on the basis of respondeat superior.

Turning to the allegations against Lieutenant Bingham and Officers 1 and 2, the movants contend that they are entitled to summary judgment that said Defendants were not deliberately

indifferent to Plaintiff's medical needs. (Def. Br. at 12.) The Court, again, agrees. "Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, because it constitutes 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pitts v. Hayman*, No. 07-2256, 2008 U.S. Dist. LEXIS 31650 (D.N.J. April 16, 2008), *quoting Helling v. McKinney*, 509 U.S. 25, 32 (1993). "Accordingly, to succeed on an Eighth Amendment medical-care claim, an inmate must establish that (1) he has a serious medical need, and (2) prison officials were deliberately indifferent to such medical need." *Pitts*, 2008 U.S. Dist. LEXIS 31650, at *12, *citing Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"To satisfy the first prong of the . . . inquiry, the inmate must allege facts indicating that his medical needs are serious." *Williams v. O'Neal*, No. 08-1060, 2008 U.S. Dist. LEXIS 34516, at *5-6 (D.N.J. April 28, 2008). "Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss." *Id.* at 6, *citing Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

"The second element of the . . . test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need." *Williams*, 2008 U.S. Dist. LEXIS 34516, at *6. "'Deliberate indifference' is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm." *Id.*, *citing Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). "[A] prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference," and "mere disagreements over

medical judgment do not state Eighth Amendment claims." *Williams*, 2008 U.S. Dist. LEXIS 34516, at *6-7, *citing White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990), *Andrews v. Camden County*, 95 F. Supp.2d 217, 228 (D.N.J. 2000).

Plaintiff in the case at bar acknowledges she was treated by a physician in the days following the assault at the hands of Ms. Gabr, but maintains that the treatment was inadequate. She submits that the failure on the correction officers' part to properly cater to her medical needs amounts to a violation of her constitutional rights.   The Court holds that Ms. Lambert has raised a genuine issue of material fact as to the seriousness of her injuries by alleging that she suffered a broken nose, two broken ribs, two black eyes, and permanent neck damage.  Ms. Lambert has, however, failed to raise such an issue of material fact with respect to the second prong of the test.

There is no denying that Plaintiff is dissatisfied with the treatment she received.   But Ms. Lambert has alleged no facts to support her claim that any of the Defendants acted with deliberate indifference with respect to her medical need.  At most, she has alleged negligence or malpractice.  *See Williams*, 2008 U.S. Dist. LEXIS 34516, at *7 ("Even assuming, arguendo, that plaintiff's medical needs were serious, he was treated by monitoring of his blood pressure and by blood work, albeit a month later. At most, plaintiff has alleged facts indicating negligence, or medical malpractice, which does not rise to a constitutional violation."); *Pitts*, 2008 U.S. Dist. LEXIS 31650, at *13, *quoting Rouse*, 182 F.3d at 197 (claims of negligence or malpractice are not sufficient to establish deliberate indifference); *White*, 897 F.2d at 106 (same). The officers placed Ms. Lambert under the care of doctors, and cannot be deemed to have been deliberately indifferent to her plight. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that defendants were not physicians and could not be considered deliberately indifferent "simply

because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.").

**CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment and deny their motion to dismiss as moot. An appropriate form of Order accompanies this Opinion.

Dated: June 17, 2008

                                               s/ Garrett E. Brown, Jr.
                                               GARRETT E. BROWN, JR., U.S.D.J.